Filed 12/23/20  P. v. Pickens CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ROSEVETTE PICKENS,<br><br>　　　Defendant and Appellant. | A156214<br><br><br>(City & County of San Francisco<br>Super. Ct. No. 224702) |

**INTRODUCTION**

　　　Rosevette Pickens is a diagnosed paranoid schizophrenic.  In 2015, after stabbing a woman in the back with a knife, Pickens pleaded guilty to two assault charges, one of which would qualify as a prior conviction for purposes of the "Three Strikes" law.  (See Pen. Code, § 667, subds. (b)–(i).)[1] As to the qualifying strike offense (§ 245, subd. (a)(1) [count I]), the trial court granted Pickens deferred entry of judgment (DEJ) with a referral to Behavioral Health Court (BHC), pending satisfactory completion of her misdemeanor probation in an unrelated case.  As to the non-qualifying strike offense (§ 245, subd. (a)(4) [count III]), the trial court sentenced Pickens to three years in prison with credits for time served.  In 2018, after assaulting her case manager, Pickens's misdemeanor probation was revoked.  At the

---

　　　[1] All further undesignated statutory references are to the Penal Code.

revocation hearing, the trial court also terminated Pickens from the DEJ program and imposed judgment on the qualifying strike offense (count I), sentencing her to three years in state prison. The court then purported to stay the previously completed sentence on the non-strike offense (count III) nunc pro tunc.

On appeal, Pickens claims that she was terminated from the DEJ program without adequate notice. She further claims that the trial court erred in punishing her multiple times for the same act in violation of section 654. Pickens argues she is entitled to remand for the trial court to consider mental health diversion pursuant to section 1001.36, which was added by Assembly Bill No. 1810, effective June 27, 2018 (Stats. 2018, ch. 34, § 24). In addition, Pickens contends the trial court erred in imposing fines and fees without first determining her ability to pay, in violation of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Alternatively, she argues her attorney rendered ineffective assistance of counsel by failing to seek mental health diversion and by failing to object to the imposition of the fines and fees without a hearing to determine her ability to pay.

Because we conclude the trial court erred in issuing the nunc pro tunc order as to count III (§ 245, subd. (a)(4)) and by failing to stay count I (§ 245, subd. (a)(1)) pursuant to section 654, we remand for resentencing. In addition, as required by the Supreme Court's recent decision in *People v. Frahs* (2020) 9 Cal.5th 618, 624–625 (*Frahs II*), we conditionally reverse the conviction and sentence as to count I and direct the trial court to conduct a hearing on Pickens's eligibility for mental health diversion under section 1001.36. If the court does not grant diversion, or if Pickens does not successfully complete diversion, the trial court shall reinstate the conviction

on count I (§ 245, subd. (a)(1)), impose sentence, and stay such sentence pursuant to section 654.

Since we conditionally reverse on the mental health diversion issue, we do not address Pickens's argument that the trial court violated due process by terminating her from the DEJ program without adequate notice and by imposing fines and fees without holding a hearing on her ability to pay.[2] On remand, the court may consider the full range of options available to it at that time, including Pickens's ability to pay court fines and fees under *Dueñas, supra*, 30 Cal.App.5th 1157.

## BACKGROUND[3]

### A. *Original Charges and Plea Bargain*

On March 27, 2014, the San Francisco City and County District Attorney, in case No. 14008610, charged Pickens by amended complaint with assault with a deadly weapon, to wit, a knife, along with an allegation that Pickens personally caused great bodily injury[4] (§§ 245, subd. (a)(1), 12022.7, subd. (a) [count I]), and vandalism (§ 594, subd. (b)(2)(A) [count II]).

On May 12, 2014, the trial court found Pickens incompetent to stand trial and transferred her to the State Department of State Hospitals pending

---

[2] We similarly do not address Pickens's alternative claims of ineffective assistance of counsel.

[3] We do not include the facts of the underlying offenses as they are not relevant to the issues on appeal.

[4] It is unclear from the record on appeal what happened to this allegation. Other than the reference in the amended complaint, the great bodily injury allegation (§ 12022.7, subd. (a)) does not appear again in the record. It is not referenced at the plea hearing or at the revocation hearings. The abstract of judgment from December 20, 2018, refers to "ADW/GBI FORCE/OTH THAN FIREARM" but does not specifically refer to section 12022.7, subdivision (a) or list it in the enhancement section.

a showing of competency. A year later, on May 27, 2015, the trial court found Pickens's competency had been restored.

On September 22, 2015, pursuant to a plea bargain, the district attorney amended the complaint in case No. 14008610 to add count III regarding assault with force likely to cause great bodily injury. (§ 245, subd. (a)(4).) At the plea hearing held the same day, Pickens pleaded guilty to count I (§ 245, subd. (a)(1)) and count III (§ 245, subd. (a)(4)).[5] The plea bargain contemplated that Pickens would be sentenced to prison for the midterm of three years on count III, which would not qualify as a strike. As Pickens had already served the midterm while in custody, the parties agreed she would receive a "paper commitment" on count III.

With respect to count I, which would qualify as a strike, Pickens would be referred to BHC, which, if successfully completed, would allow her to withdraw her plea to count I and have that charge dismissed. Among the conditions of the DEJ was that Pickens "not sustain a new arrest" and that she be on probation for three years in an unrelated misdemeanor (§ 148, subd. (a)(1)) offense in case No. 14018108.

At the September 22, 2015 hearing, Pickens pleaded no contest to the unrelated misdemeanor resisting arrest charge (§ 148, subd. (a)(1)) in case No. 14018108. After waiving formal arraignment for judgment and sentence, Pickens was placed on three years' probation in case No. 14018108. Pickens was advised that if her probation was "terminated" she would be "sentenced on the DEJ."

On October 20, 2015, Pickens was sentenced in case No. 14008610 to three years in prison on count III. In light of Pickens's combined credits of

---

[5] The remaining vandalism count was dismissed.

4

1,095 days, her sentence was deemed served pursuant to section 1170, subdivision (a)(3).

## B.     *Probation Revocation and DEJ Termination*

On November 20, 2018, the probation department filed a motion to revoke Pickens's misdemeanor probation in case No. 14018108, on the grounds that she assaulted her case manager, Delia Zaragoza, during a home visit on August 21, 2018. Pickens appeared with counsel at the December 11, December 13, and December 20, 2018 hearings held on the motion to revoke. Defense counsel cross-examined Zaragoza and argued that Pickens's behavior was an "unusual occurrence" given that Zaragoza previously met with Pickens four or five times without incident. At the conclusion of the December 11 hearing, the trial court determined there was sufficient evidence of a probation violation.

At the December 13 hearing, defense counsel acknowledged that Pickens's misdemeanor case, which was the subject of the motion to revoke, was "related" to her felony case that "was a DEJ." Defense counsel explained that "the agreement was that if she completed BHC and suffered no new arrests and completed her probation in the misdemeanor matter successfully, that she would be entitled to her bargained-for plea." Nevertheless, defense counsel asserted that even though the court found "that a violation of probation did take place, it's not a reason to terminate her from BHC. And it doesn't rise to the level that she should be revoked and . . . have the sentence imposed because the consequence of that would be that she is terminated from BHC and suffers a strike and is then sentenced on the strike."

At the December 20 hearing, defense counsel reiterated that although a violation of probation had been established, it did not "warrant revocation and imposition of sentence" because, although she was severely mentally ill,

5

she was committed to completing probation. In arguing for alternative punishment, defense counsel argued that "by revoking her probation and sentencing her you're, in effect, also deciding what happens with the other matter, which is a violation of Penal Code Section 245(a)(1). It's a strike. A few years ago she pled to that offense with the understanding that her sentence would be deferred and that if she was able to complete [BHC] successfully, that she would be allowed to withdraw her plea and plead to a non-strike."

The prosecutor argued that Pickens was "extraordinarily dangerous bordering on lethal," as evidenced by the underlying stabbing offense. Although the prosecutor had previously agreed to accept a plea bargain in exchange for a "soft felony," she explained that the agreement included "the understanding that if she suffered new arrests, new charges, did not successfully complete [the] program, she would be resentenced on the strike offense [for felony assault with a deadly weapon]," adding that "without that disposition, Ms. Pickens would have been in state prison years ago." The prosecutor further argued that Pickens had demonstrated she could not safely complete the DEJ program, as evidenced by Pickens's severely battering her case manager, causing her "significant" injuries.

On December 20, 2018, the trial court found that Pickens had violated her misdemeanor probation in case No. 14018108, ordered that the deferred judgment in case No. 14008610 on her assault with a deadly weapon conviction (§ 245, subd. (a)(1)) be imposed, and sentenced her to an additional three years in prison. In light of the credits Pickens had accumulated (1,856 days), she would receive a paper commitment and be subject to parole. The court further advised the parties that because Pickens had been "sentenced . . . on the 245(a)(1) [Count I], Count [III] [245(a)(4)] should be dismissed."

6

Defense counsel expressed confusion about whether the court was "vacating the sentence on the 245(a)(4)," adding that Pickens "was already sentenced and had already completed her parole." The prosecutor agreed with the court that it was a section "654 issue . . . ." The court then invited the prosecutor "to make a motion to dismiss Count 3," or the court would "stay Count 3 permanently nunc pro tunc to the date of the plea . . . ." The prosecutor asserted that staying the sentence nunc pro tunc was "the best option."

The trial court permanently stayed count III nunc pro tunc to September 22, 2015, the date of Pickens's plea.

This timely appeal followed.

## DISCUSSION

### A. *Nunc Pro Tunc Error*

Courts do not have unlimited authority to use nunc pro tunc authority to correct any and all errors. Rather, "courts have inherent authority to correct clerical errors in a sentence at any time. " 'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. . . . The power is unaffected by the pendency of an appeal or a habeas corpus proceeding. [Citation.] The court may correct such errors on its own motion or upon the application of the parties.' [Citation.] This nunc pro tunc authority, however, is limited to *true clerical errors*." (*People v. Kim* (2012) 212 Cal.App.4th 117, 123–124, italics added.) It does not authorize the court to substantially modify the original judgment. " 'The distinction between clerical error and judicial error is "whether the error was made in rendering the judgment, or in recording the judgment rendered." ' " (*Id.* at p. 124.) A nunc pro tunc order cannot " ' " 'declare that something was done which was not done.' " ' " (*Ibid.*, citing *People v. Borja* (2002) 95 Cal.App.4th 481, 485 [365-day jail sentence as

7

condition of probation cannot be changed to a 364-day sentence by nunc pro tunc order].)

Here, the trial court purported to stay the sentence on count III nunc pro tunc. It is undisputed, however, that Pickens had been sentenced to time served and had already completed her parole. Even overlooking the factual impossibility of staying a sentence that had already been served, the court was not authorized to modify the sentence for count III nunc pro tunc. The court was not correcting a "clerical error" with respect to count III. Rather, the court was attempting to deal with the legal dilemma of how to apply section 654 to Pickens's case.

"Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.) Pickens contends that her punishment for count I should have been stayed under section 654 because she committed a single assault. The Attorney General does not dispute that section 654 would apply, but contends Pickens has forfeited this issue by accepting the negotiated plea and by failing to obtain a certificate of probable cause.

Preliminarily, we disagree that a certificate of probable cause is required here. Pickens is not challenging the validity of her plea or otherwise seeking to vary the terms of her plea. Instead, she is seeking to have that bargain enforced under the agreed-upon terms. The California Supreme Court has "made clear that where the terms of the plea agreement leave issues open for resolution by litigation, appellate claims arising within the scope of that litigation do not attack the validity of the plea, and thus do not require a certificate of probable cause." (*People v. Buttram* (2003) 30 Cal.4th 773, 783; see *People v. Mendez* (1999) 19 Cal.4th 1084, 1088 [certificate issues encompass matters that attack the validity of the plea and generally do not

8

include matters occurring after entry of the plea such as the degree of the crime or the penalty to be imposed].)

We also disagree that Pickens, by reason of her plea bargain, has waived the right to raise the application of section 654 to her convictions. The clear intent of the plea bargain was to allow Pickens to avoid a prior strike conviction by completing the BHC program. However, if Pickens were unsuccessful and sentenced on count I, she would be convicted of the strike offense and subject to various fines and fees. Nothing in the record suggests that Pickens agreed to be sentenced to an additional prison term or otherwise be punished twice for the same offense.

Moreover, at the sentencing hearing, the prosecutor agreed with the trial court that section 654 applied. Although the trial court framed the issue as whether count III should be dismissed or stayed permanently, neither option was available as Pickens had already served her sentence on count III and completed her parole. (See *People v. Kim, supra*, 212 Cal.App.4th at pp. 122–123 [trial court has no authority to dismiss an action after judgment has been imposed and defendant has served his or her sentence].) Instead, the only viable option was to stay count I pursuant to section 654. Having failed to do so, the trial court punished Pickens twice, albeit with two paper commitments, for a single assault. The net effect of the trial court's failure to stay count I is that Pickens will have suffered two separate prison commitments and two separate periods of parole for the same underlying offense. Accordingly, the matter must be remanded for the trial court to strike the nunc pro tunc order staying count III and to issue a new order staying count I pursuant to section 654 and terminating Pickens's parole as to count I.

9

**B.**    *Mental Health Diversion*

Pickens contends that section 1001.36 applies retroactively to her case and that count I should be remanded for a mental health diversion hearing. The Attorney General asserts that section 1001.36 does not apply retroactively and that, in any event, Pickens did not make an adequate showing of eligibility under section 1001.36 to require a remand.

Generally, pretrial diversion suspends criminal proceedings for a prescribed time period, subject to specified conditions.  (See §§ 1000–1000.1 [drug offense diversion], 1001.60–1001.62 [bad check diversion], 1001.71 [parental diversion], 1001.80 [military diversion], 1001.81 [repeat theft offense diversion].)  Criminal charges normally are dismissed if a defendant successfully completes a diversion program.  (See §§ 1001.9, 1001.33, 1001.55, 1001.74–1001.75.)

Effective June 27, 2018, the Legislature enacted section 1001.36, which authorizes pretrial diversion for qualifying defendants with mental health disorders.  Section 1001.36 defines " 'pretrial diversion' [as] the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication . . . ."  (§ 1001.36, subd. (c).)

Section 1001.36 authorizes the trial court to grant pretrial mental health diversion if the following criteria are satisfied: (1) the trial court is satisfied, based on evidence from a qualified mental health expert, that the defendant suffers from a recognized mental disorder; (2) the trial court is satisfied the defendant's disorder played a significant role in the commission of the charged offense; (3) in the opinion of a qualified mental health expert, the defendant's mental health symptoms, which motivated criminal behavior, would respond to mental health treatment; (4) the defendant consents to

10

diversion and waives his or her right to a speedy trial; (5) the defendant agrees to comply with treatment for the disorder as a condition of diversion; and (6) the trial court is satisfied the defendant "will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (b)(1)(A)–(F).)

Until recently, the Courts of Appeal were divided on the question of whether section 1001.36 applies retroactively to persons who were tried, convicted, and sentenced before section 1001.36 went into effect on June 27, 2018. (Compare *People v. Frahs* (2018) 27 Cal.App.5th 784, 790–792 (*Frahs I*) [§ 1001.36 applies retroactively] with *People v. Craine* (2019) 35 Cal.App.5th 744, 749, 754, 760 (*Craine*) [§ 1001.36 applies only prospectively].)

However, on June 18, 2020, the Supreme Court in *Frahs II* affirmed the decision of the Court of Appeal, which concluded section 1001.36 applies retroactively to all persons whose judgments were not final when section 1001.36 went into effect on June 27, 2018. (*Frahs II, supra*, 9 Cal.5th at pp. 626–631.) In affirming the decision of the Court of Appeal, the Supreme Court also disapproved *Craine*. (*Id.* at p. 631, fn. 2.) The decision in *Craine* disagreed with the reasoning of *Frahs I* and held that "section 1001.36 does not apply retroactively to defendants whose cases have progressed beyond trial, adjudication of guilt, and sentencing." (*Craine, supra*, 35 Cal.App.5th at p. 760.) Here, Pickens's case had been adjudicated and she had been sentenced, but the judgment is not final on appeal.

Because the Supreme Court in *Frahs II* has thoroughly analyzed this issue and concluded section 1001.36 applies retroactively, it is unnecessary to discuss the retroactivity issue any further. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [courts exercising inferior

11

jurisdiction must accept the law as declared by courts exercising superior jurisdiction].)  In sum, as articulated by the Supreme Court in *Frahs II*, the Legislature implicitly intended section 1001.36 to apply retroactively to all defendants whose judgments were not final when section 1001.36 went into effect on June 27, 2018.  (*Frahs II, supra*, 9 Cal.5th at pp. 626–637.)

Thus, we conditionally reverse the judgment and remand on count I for further proceedings in accordance with the procedures outlined by the Court of Appeal in *Frahs I, supra*, 27 Cal.App.5th 784, and affirmed by the Supreme Court.  (*Frahs II, supra*, 9 Cal.5th at pp. 637–640.)  The *Frahs I* court adopted a conditional reversal and remand procedure which requires the court to "conduct a mental health diversion eligibility hearing under the applicable provisions of section 1001.36."  (*Frahs I*, at p. 792.)  "When conducting the eligibility hearing, the court shall, to the extent possible, treat the matter as though [the defendant] had moved for pretrial diversion after the charges had been filed, but prior to their adjudication."  (*Ibid.*)  In addition, as discussed in *Frahs I*, section 1001.36 authorizes the trial court to grant pretrial mental health diversion if the six criteria under section 1001.36 are satisfied.  (*Id.* at p. 789.)

Furthermore, "[i]f [the] trial court determines that a defendant meets the six requirements, then the court must also determine whether 'the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant.' (§ 1001.36, subd. (c)(1)(A).)  The court may then grant diversion and refer the defendant to an approved treatment program.  (§ 1001.36, subd. (c)(1)(B).) Thereafter, the provider 'shall provide regular reports to the court, the defense, and the prosecutor on the defendant's progress in treatment.' (§ 1001.36, subd. (c)(2).)  'The period during which criminal proceedings

12

against the defendant may be diverted shall be no longer than two years.' (§ 1001.36, subd. (c)(3).) [¶] If the defendant commits additional crimes, or otherwise performs unsatisfactorily in diversion, then the court may reinstate criminal proceedings. (§ 1001.36, subd. (d).) However, if the defendant performs 'satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings.' (§ 1001.36, subd. (e).)" (*Frahs I, supra*, 27 Cal.App.5th at pp. 789–790.)

The Attorney General contends that even if section 1001.36 applies retroactively, Pickens's judgment should be affirmed because she has not shown she would be eligible for mental health diversion under section 1001.36. We conclude, to the contrary, that remand is necessary to allow a diversion eligibility hearing under section 1001.36.

While it is Pickens's burden to show that all of the statutory criteria of section 1001.36 are met, which she has not shown here, she is entitled to a hearing in order to prove her eligibility. Remand is appropriate in this case because the record "affirmatively discloses that [Pickens] appears to meet at least one of the threshold requirements," namely, she suffers from a diagnosed mental health disorder.[6] (See § 1001.36, subd. (b)(1)(A).) (*Frahs I, supra*, 27 Cal.App.5th at p. 791; accord, *Frahs II, supra*, 9 Cal.5th at pp. 640–641.)

Based on our review of the record, remand for a diversion hearing under section 1001.36 is required here because we cannot conclude that Pickens is unable to demonstrate the eligibility factors listed in section 1001.36, subdivision (b)(1)(A)–(F). This court cannot make factual determinations in the first instance as to whether Pickens has sufficiently

---

[6] Pickens was diagnosed with "Schizophrenia Paranoid Type . . . ."

13

demonstrated any of the eligibility factors for mental health diversion under section 1001.36. It is inappropriate for this court to speculate as to whether the trial court will find Pickens eligible for mental health diversion. Remand is therefore necessary because we cannot say, as a matter of law, based on the record, that Pickens would not be able to establish eligibility for mental health diversion under section 1001.36.

## DISPOSITION

The matter is remanded to the trial court for resentencing with directions to: (1) strike the nunc pro tunc order as to count III (§ 245, subd. (a)(4)); (2) issue an order staying count I (§ 245, subd. (a)(1)) pursuant to section 654; and (3) immediately terminate the unauthorized parole imposed on count I.

In addition, the judgment as to count I is conditionally reversed, and the matter is remanded to the trial court with directions to conduct a diversion eligibility hearing under section 1001.36. If the trial court determines that Pickens is not eligible for diversion, then the court shall reinstate the judgment as to count I, stay the sentence pursuant to section 654, and terminate parole.

If the trial court determines that Pickens is eligible for diversion on count I but, in exercising its discretion, the court determines diversion is not appropriate under the circumstances, then the court shall reinstate the judgment, stay the sentence pursuant to section 654, and terminate parole.

If the trial court determines that Pickens is eligible for diversion on count I and, in exercising its discretion, the court further determines diversion is appropriate under the circumstances, then the court may grant diversion. If Pickens successfully completes diversion, the court shall dismiss the section 245, subdivision (a)(1) charge in accordance with section 1001.36,

14

subdivision (e).  If Pickens does not successfully complete diversion, the trial court shall reinstate the judgment as to count I, stay the sentence pursuant to section 654, and terminate parole.

If the trial court reinstates the judgment as to count I under any of these situations, it shall in advance consider any argument raised by Pickens about her inability to pay court fines and fees.

_____
Jackson, J.

WE CONCUR:


_____
Siggins, P. J.


_____
Fujisaki, J.

A156214/*People v. Rosevette Pickens*

16