Filed 9/18/19

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARKEITH JENKINS,<br><br>    Defendant and Appellant. | D073662<br><br><br><br>(Super. Ct. Nos.<br>CD272046/CD270678) |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Reversed in part, remanded with directions.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Yvette M. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I and II.

A jury convicted defendant Markeith Jenkins of assault by means likely to produce great bodily injury (Pen Code,[1] § 245, subd. (a)(4)) and battery with serious injury (§ 243, subd. (d)). The jury also found true defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)). Defendant subsequently admitted to having two prior strike convictions (§ 667, subds. (c) & (e)(2)(A)); two prior serious felony convictions (§§ 667, subd. (a)(1) & 1192.7, subd. (c)); and two prior prison convictions (§ 667, subd. (b)).

Before sentencing, defendant filed a motion based on *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) seeking in the interest of justice to have one or more of his strike priors set aside. The court denied that motion, imposed on defendant the term of 25 years to life on the assault by means likely to produce great bodily injury conviction; stayed pursuant to section 654, subdivision (a)(1) his sentence on the conviction for battery with serious bodily injury; and imposed three consecutive years for the great bodily injury enhancement (§ 12022.7, subd. (a)); and an additional 10 years for the two serious felony prior convictions, for a total sentence of 13 years plus 25 years to life.

In his opening brief, defendant contends remand is necessary both for a pretrial diversion hearing (§ 1001.36), and to give the court an opportunity to exercise its newly provided discretion pursuant to Senate Bill No. 1393 (2017–2018 Reg. Sess.), (hereafter Senate Bill 1393), effective January 1, 2019, to dismiss or strike one or more of his serious felony prior convictions. Defendant alternately contends the court abused its

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

discretion when it refused under *Romero* to strike one or more of his prior strike convictions.

After the People filed their respondent's brief, defendant moved in the *trial court* to vacate various fines, assessments, and fees imposed at sentencing (sometimes, motion to vacate), relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Defendant provided this court with a courtesy copy of the motion to vacate when he filed his reply brief in this court on May 10, 2019.

On June 19, 2019, on our own motion we requested supplemental briefing on the following two issues: (1) whether a superior court retains jurisdiction under section 1237.2 to address the imposition of fines, assessments, and fees imposed on a defendant, when an appeal has already been filed in which the imposition of such is *not* the only issue being appealed; and, regardless of the outcome of that threshold issue, (2) whether defendant in the instant case is entitled to a hearing under *Dueñas* on his ability to pay the fines, assessments, and fees that were imposed at sentencing, or whether he forfeited that alleged right by his failure to object to such imposition. The parties submitted supplemental briefing as requested, which we have considered in deciding this case.

As we explain, we agree newly enacted section 1001.36 and newly amended sections 667, subdivision (b), and 1385, subdivision (b), apply retroactively in this matter. Accordingly, we conditionally reverse the judgment and remand the matter to

allow the trial court an opportunity to exercise its discretion under these statutes, as discussed in more detail *post*.[2]

As we further explain, we conclude the trial court lacked jurisdiction under section 1237.2 to rule on defendant's motion to vacate because as is clear, defendant's appeal raises issues other than the imposition of fines, assessments, and fees. We also conclude on the facts of this case that defendant forfeited his right to challenge the imposition of such.

FACTUAL BACKGROUND

Victim Brooks A. testified he and his friend David. L. had dinner on May 12, 2017, at a restaurant located in Balboa Park in San Diego. After dinner, while walking back to their car, Brooks heard and saw two males on the opposite side of the street "having a very loud conversation." As Brooks and David continued walking, they heard the yelling between the two males becoming louder. Brooks then looked over his right shoulder and noticed one of the two males who had been yelling approaching from behind. Brooks at trial identified this man as defendant. Brooks observed the man was a few feet away, and appeared animated and aggressive as he approached.

Brooks testified the man was still yelling loudly, but this time at them. Although the man was "really incoherent," Brooks did hear him say something like, "Why—why are you walking away from me?" Brooks did not know the man, and had never seen or spoken to him before. Brooks turned toward the man, and said "something to the effect

---

[2]     In light of our decision, we deem it unnecessary to determine whether the court erred in refusing under *Romero* to strike one or more of defendant's prior strikes.

4

of, I'm sorry. I don't—I don't know what's going on" Brooks noticed the man was holding or "gripping something" in his right hand.

Before Brooks could take another step and without warning, he felt a fist hit his jaw, nose, and cheek area. Brooks did not see what he described as a bone-shattering punch because he was in the process of turning around when struck. The force of the blow "shattered" multiple teeth, "busted" open his lip, and caused significant blood loss from his mouth and nose. David called 911 while he and Brooks walked to the end of the street, where they met police. Immediately before the punch, Brooks did not see anyone threatening the man, including, as discussed *post*, "with a stick."

For weeks after the attack, Brooks could not eat solid food; he also had trouble breathing and swallowing, and experienced significant pain and discomfort despite taking pain medication. Months after the attack, Brooks still experienced facial swelling and discomfort from the punch.

David testified he and Brooks had been friends for years. After dinner while walking back to David's car, they heard a man behind them "yelling" but could not make out what the man was saying. The man, whom David described as middle-aged and whom he identified in court as defendant, appeared to be yelling at them, as he was looking directly at Brooks and David. Like Brooks, David did not know the man, and had never met or spoken to him. David also did not see the man being chased by another man holding a stick. As soon as they both turned around in response to the man's yelling, according to David the man appeared "ready to attack and then . . . did," hitting Brooks in the face.

5

David saw the man was holding an object in his right hand when he punched Brooks in the face. David, however, could not tell what the object was. David, who worked in a hospital, noted the punch was forceful enough to knock off parts of Brooks's teeth. Immediately after the punch, blood started pouring out of Brooks's mouth and nose. In shock over what had just happened to Brooks, David yelled at the man, who turned around and walked the other way. David also heard a bystander on the other side of the street yell at the man. After assessing the injuries to Brooks's face, David called 911. As he was doing so, he saw the man again start to approach. Scared for their safety, David and Brooks crossed the street to avoid the man.

Defendant testified in his own defense. On the day of the May 12 attack, defendant was temporarily homeless and living in Balboa Park. As he was resting by a tree with his eyes closed, defendant heard someone going through his belongings. When he looked up, he saw a woman he described as homeless running away. Defendant checked his personal belongings and found his cigarettes and debit card missing.

Defendant next saw a large man holding a "giant stick" staring at him. Defendant estimated the stick was about six inches in diameter, and believed this individual, whom he had seen in the park before, was a lookout for the woman who had just stolen some of his belongings. The individual looked like he wanted to hurt defendant.

Defendant nonetheless approached this individual and pleaded for the return of his debit card. In response, the individual told defendant to leave, at the same time flexing his muscles. Defendant, who was then standing in the middle of the street, heard

6

someone yell "Hit him." Defendant believed someone across the street was imploring the individual to strike defendant with the stick.

Defendant testified the man who yelled "Hit him" was victim Brooks. Defendant angrily approached Brooks, attempted to explain that he had just been robbed of his cigarettes and debit card, and suggested that Brooks should try and help him instead of encouraging the other individual to use the stick to hit defendant. According to defendant, Brooks in response merely said, "I can't help you," or words to that effect. As defendant was having this conversation with Brooks, defendant saw the individual with the stick walking "fast" toward them.

Fearing for his own safety, defendant testified he then "lunged" toward, and punched, Brooks to keep from being hit by the other individual, who, according to defendant, was aggressively swinging the stick as he approached. Defendant claimed he had nothing in his hand, and only used his fist, when he hit Brooks.

According to defendant, the other individual again sought to strike defendant with the stick. This time, defendant grabbed the stick, and the two men struggled over it. Because the other individual was wearing leather gloves, he dropped the stick, allowing defendant to take possession of it. Defendant then threw the stick over the bridge.

Defendant testified that he never felt threatened or "anything like that" by Brooks; that Brooks had no weapons in his hand when defendant hit him; that defendant did not hit Brooks in self-defense; but that Brooks "just was in the way" as defendant attempted to avoid the other individual holding the stick. Defendant also testified he was not a "violent person," and he felt bad about hurting Brooks.

7

## DISCUSSION

## I

## Mental Health Diversion

Defendant contends that he is entitled to a conditional remand to allow the trial court to exercise its discretion and consider granting him mental health diversion under section 1001.36. Relying on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), defendant contends this statute applies retroactively in this matter because it has an ameliorative effect on punishment. The People disagree, arguing Legislative intent shows the statute was not intended to apply retroactively. We agree with defendant.

A. *Guiding Principles*

Section 1001.36 was enacted on June 27, 2018 (Stats. 2018, ch. 34, § 24, pp. 1318–1321) and took effect immediately. (*Id.*, § 37, at p. 1341.) A court may grant pretrial diversion under section 1001.36 if the court finds: (1) the defendant suffers from an identified mental disorder; (2) the mental disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to treatment; (4) the defendant consents to diversion and the defendant waives his or her speedy trial rights; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if the defendant is treated in the community. (§ 1001.36, subd. (b)(1).)

If the court grants pretrial diversion, "[t]he defendant may be referred to a program of mental health treatment utilizing existing inpatient or outpatient mental health resources" for "no longer than two years." (§ 1001.36, subd. (c)(1)(B) & (3).) If the

8

defendant performs "satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id*. subd. (e).)

As a canon of statutory interpretation, we generally presume laws apply prospectively. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307 (*Lara*).) However, the Legislature may explicitly or implicitly enact laws that apply retroactively. (*Ibid.*) To determine whether a law applies retroactively, we must determine the Legislature's intent. (*Ibid.*)

B. *Section 1001.36 and Retroactivity*

Courts are divided as to whether section 1001.36 applies retroactively to cases not yet final on appeal. (Compare *People v. Hughes* (Sept. 11, 2019) __ Cal.App.5th __, 2019 WL 4307903, p. *1 (*Hughes*) [§ 1001.35 applies retroactively]; *People v. Burns* (2019) 38 Cal.App.5th 776, 2019 WL 3811976, p. *5 (*Burns*), review filed (Aug. 30, 2019) [same]); *People v. Weaver* (2019) 36 Cal.App.5th 1103, 1121 (*Weaver*) [same]; *People v. Frahs* (2018) 27 Cal.App.5th 784, review granted Dec. 27, 2018, S252220 (*Frahs*) [same]; with *People v. Torres*, *Jr.* (Sept. 10, 2019) __ Cal.App.5th __, 2019 WL 4267760, pp. *2–3 [§ 1001.36 does not apply retroactively]; *People v. Craine* (2019) 35 Cal.App.5th 744, 749 (*Craine*) [same].)

"*Frahs* observed that just as the timing requirement for transfer motions did not bar retroactive application of Proposition 57 to nonfinal cases, section 1001.36, subdivision (c)'s reference to 'pretrial' diversion before 'adjudication' merely reflected 'how this particular program is ordinarily designed to operate' and did not bar

9

retroactivity. (*Frahs*, [*supra*, 27 Cal.App.5th] at p. 791.) Disagreeing with *Frahs*, *Craine* relied on the statutory text to conclude a *pretrial* diversion program could not apply to a defendant who had already been convicted and sentenced. (*Craine*, [*supra*, 35 Cal.App.5th] at p. 751.) *Weaver* acknowledged the statutory text cited by *Craine*, but found it insufficient to rebut *Estrada*'s inference of retroactivity as applied in *Lara.* (*Weaver*, [*supra*, 36 Cal.App.5th] at pp. 1120–1121.)

"Were we writing on a blank slate, we might find *Craine*'s reasoning persuasive. Language in section 1001.36 reflects certain legislative assumptions about how the mental health diversion program will operate, and the references to *pretrial* diversion seem to suggest an understanding about the anticipated timing of such a request. However, addressing a statute that also contained express timing requirements, the California Supreme Court in *Lara* unanimously concluded the *Estrada* presumption applied even though those requirements could not be met if the statute were invoked in cases not final on appeal. (*Lara*, *supra*, 4 Cal.5th at p. 309.)

"It is true, as *Craine* points out, that *Lara* did not specifically discuss this statutory 'timing' language in Proposition 57. (*Craine*, *supra*, 35 Cal.App.5th at p. 756; see Welf. & Inst. Code, § 707, former subd. (a)(1), now subd. (a)(1) & (2).) Nevertheless, we can find no reasonable way to factually distinguish *Lara* on this point. *Craine*'s suggestion that the statutory timing language in *Lara* 'did not facially preclude retroactive application of Proposition 57' and 'only presented a theoretical obstacle for prosecutors in terms of getting cases previously filed under the old law transferred from juvenile court back into criminal court' (*Craine*, at p. 757) does not persuade us. The relevance of the

10

timing language in both statutes is that it reflects legislative intent as to how the new procedure will *normally* operate. If that intent is not enough to dictate prospective application in *Lara* as to Proposition 57, we do not see how it can require prospective application as to mental health diversion in section 1001.36. And to reject *Lara* on the basis that a decision is not authority for a proposition not specifically discussed would be to conclude that the Supreme Court reached the wrong result because it overlooked crucial statutory language." (*Burns*, *supra*, __ Cal.App.5th __, 2019 WL 3811976, p. *5.)

Furthermore, our high court decided *Lara* before the Legislature enacted section 1001.36, and the Legislature is deemed to have been aware of the decision. (See *People v. Overstreet* (1986) 42 Cal.3d 891, 897.) Had the Legislature intended for the courts to treat section 1001.36 in a different manner, we would expect the Legislature to have expressed this intent clearly and directly, not obscurely and indirectly. (See *In re Pedro T.* (1994) 8 Cal.4th 1041, 1049 [noting that, to counter the *Estrada* rule, the Legislature should "demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it"].)

Our high court will soon decide the retroactivity question. Until it does so, we are unpersuaded that the Legislature's intent is sufficiently clear to rebut the *Estrada* inference. We thus will follow *Burns*, *Weaver*, *Frahs*, and similar cases in applying *Lara* to permit retroactive application of section 1001.36. This conclusion, however, does not end our analysis.

11

C. *Conditional Reversal Is Warranted to Allow Defendant the Opportunity to Make a "Prima Facie Showing" of Eligibility under Section 1001.36*

Effective January 1, 2019, section 1001.36, subdivision (b)(3) provides, "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate."

Based on this provision, the People alternatively contend that remanding the instant case to allow the court to exercise its discretion is unnecessary because defendant has not established, and cannot establish, a prima facie showing of eligibility under section 1001.36. The People further contend that defendant has an adequate remedy by way of petition for writ of habeas corpus, and that, in any event, remand would be futile. We find these contentions unavailing.

Assuming, without deciding, the prima facie showing provision applies retroactively, the provision is discretionary, not mandatory. Moreover, the purpose of the provision is to determine whether a defendant is potentially eligible for diversion.

In this case, there is substantial record evidence showing that defendant suffers from an identified mental disorder, as set forth in the five-page Mental Competency Examination Report of defendant ordered pursuant to section 1368, which was the

12

subject of an October 30, 2017 competency hearing; and a 10-page postconviction psychological report of defendant dated March 2, 2018, which concluded defendant was experiencing paranoid schizophrenia, bipolar disorder, hallucinations, and erratic behavior.

There is also substantial record evidence showing that defendant's mental disorder may have played a significant role in the commission of the charged offense, as defendant testified that he was being chased by a large individual wearing leather gloves wielding a big stick, and that the victim allegedly yelled that this other individual should use the stick to hit defendant. However, neither Brooks nor David saw an individual holding a stick, much less chasing defendant while swinging it, as defendant testified.

The record also supports a potential finding that defendant's symptoms may respond to treatment, as close family members, including "aunt" Sheila S., and medical professionals, all noted defendant's behavior and symptoms improved when he took his psychotropic medication. Further, the record shows defendant acknowledged he needed mental health treatment, as did the court at his sentencing.

The key issue for purposes of making a prima facie showing of eligibility is whether defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if he is treated in the community. (See § 1001.36, subd. (b)(1).) On the one hand, the record shows that defendant has a lengthy criminal history dating back to 1987, which includes at least six prison terms, and a grant of probation at the time he committed the instant offenses; that he currently is serving a sentence under the Three Strikes law, which law the court found applicable when it refused to strike one

13

or more of his strike priors, as noted; and that he also has a long history of substance abuse.

On the other hand, we agree with defendant that he is not statutorily ineligible for diversion under section 1001.36, despite the People's argument to the contrary. This statute borrows the definition of "unreasonable risk of danger to public safety" under section 1170.18, subdivision (c), as noted, which in turn provides: " 'unreasonable risk of danger to public safety' means an unreasonable risk that defendant will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of section 667."[3] Defendant's convictions under sections 245, subdivision (a)(4) (count 1) and 243, subdivision (d) (count 2) do not include any of the "disqualifying" crimes listed in section 667, subdivision (e)(C)(iv),[4] and thus, he is not ineligible for diversion under section 1001.36, subdivision (b)(1), despite the fact his conviction under count 1 constituted a "violent felony" for purposes of section 667.5, subdivision (c)(8).

---

[3] Section 667, subdivision (e)(C)(iv) lists the following crimes, stated in part as follows: "(I) A 'sexually violent offense' "; "(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than [the defendant]"; "(III) A lewd or lascivious act involving a child under 14 years of age"; "(IV) Any homicide offense"; "(V) Solicitation to commit murder"; "(VI) Assault with a machine gun on a peace officer or firefighter"; "(VII) Possession of a weapon of mass destruction"; "(VIII) Any serious or violent felony offense punishable in California by life imprisonment or death."

[4] We note that under section 245, subdivision (a)(4), defendant was facing "imprisonment . . . for two, three or four years, or in a county jail for not exceeding one year"; and that under section 243, subdivision (d), he was facing "imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years . . . ."

Moreover, the record shows when defendant committed the instant offenses, he had not taken his psychotropic medication for days, as his backpack had been stolen while he was temporarily homeless and living in Balboa Park, as he waited for his "case worker" to provide him with new housing.

While the issue is close, we conclude on balance that defendant should be allowed an opportunity to make a "prima facie showing" that he meets the "minimum requirements of eligibility for diversion and that [he] and the offense[s] are suitable for diversion" within the meaning of section 1001.36.

## II

### Senate Bill 1393

Defendant also requested remand to allow the trial court to exercise discretion newly granted it by Senate Bill 1393 to strike one or more of his serious felony priors used to support the five-year enhancements under section 667, subdivision (a)(1). Prior to Senate Bill 1393's adoption, the law prohibited courts from striking felony priors used for purposes of the section 667 enhancement. (Former § 1385, subd. (b).) However, effective January 1, 2019, Senate Bill 1393 removed that prohibition. Defendant contends Senate Bill 1393 is retroactive and applies to all cases not yet final as of its effective date, such as this case. We agree.

Indeed, absent evidence to the contrary, amendments to statutes that reduce the punishment for a crime or vest in trial courts the discretion to impose a lesser penalty, such as Senate Bill 1393, apply to all defendants whose judgments are not final as of the amendment's effective date. (*Estrada*, *supra*, 63 Cal.2d at p. 742; *People v. Garcia*

15

(2018) 28 Cal.App.5th 961, 972 (*Garcia*).)  When it enacted Senate Bill 1393, the Legislature did not indicate it intended the legislation to apply prospectively only. (*Garcia*, at p. 972.)  The act thus applies retroactively to this issue.

We are required to remand in instances such as this "unless the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] . . . enhancement" even if it had such discretion. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.)  The record here contains no such "clear" indication.  We thus also remand for the court to consider—after determining whether defendant is eligible for mental health diversion under section 1001.36—striking one or more of the serious felony priors that support the enhancements imposed under section 667, subdivision (a)(1).

### III

### Motion to Vacate Fines, Assessments, and Fees

A.  *Defendant Was Required to Litigate this Issue in the Court of Appeal*

As noted *ante*, defendant filed his motion to vacate in the trial court, while his appeal in this court was pending.  Defendant then provided this court with a courtesy copy of his motion on the same day he filed his reply brief.  On our own motion, we obtained supplemental briefing on whether the trial court has jurisdiction under section 1237.2 to hear the motion to vacate, despite the pending appeal; and whether defendant, in any event, was entitled to such relief.  As noted, we have read and considered the parties' supplemental briefing in deciding this issue.

In determining the proper interpretation of a statute, we begin with the statutory language. " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.] "We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." [Citations.] The plain meaning controls if there is no ambiguity in the statutory language. [Citation.] If, however, "the statutory language may reasonably be given more than one interpretation, ' " 'courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' " ' " [Citation.]' " (*Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198.)

As a general rule, "an appeal from an order [or judgment] in a criminal case removes the subject matter of that order [or judgment] from the jurisdiction of the trial court." (See *Anderson v. Superior Court* (1967) 66 Cal.2d 863, 865; see also § 1235, subd. (b) ["An appeal from the judgment or appealable order in a felony case is to the court of appeal for the district in which the court from which the appeal is taken is located"].) However, section 1237.2 is an exception to this general rule. (See § 1237 [providing in part that "[a]n appeal may be taken by the defendant from . . . the following: [¶] (a) "*Except* as provided in Sections 1237.1, *1237.2*, and 1237.5, from a final judgment of conviction" (italics added)].)

17

Effective January 1, 2016, Assembly Bill No. 249 (2015–2016 Reg. Sess.), (hereafter Assembly Bill 249) added section 1237.2 (Stats. 2015, ch. 194, § 3) to the Penal Code. This statute provides: "An appeal may *not be taken* by the defendant from a judgment of conviction on the ground of an error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction in the trial court, which may be made informally in writing. The trial court retains jurisdiction after a notice of appeal has been filed to correct any error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs upon the defendant's request for correction. This section *only* applies in cases where the erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs are the *sole issue* on appeal." (Italics added.)

Thus, before an appeal may "be taken," a defendant must first seek relief in the trial court for any error in the imposition or calculation of fines, assessments, and fees, provided that issue is the *only* one being appealed. (§ 1237.2; see also *People v. Alexander* (2016) 6 Cal.App.5th 798, 800–801 (*Alexander*) [dismissing the defendant's appeal from the imposition of a $6,000 victim restitution fine because the defendant "made no claim of error to the trial court, either at the time of sentencing or after, as required by section 1237.2"].)

Conversely, if issues *other than* the imposition or calculation of such fines, assessments, and fees are being appealed, such as in the instant case, the limited

18

exception provided by section 1237.2 to section 1235 no longer applies. In this situation, a defendant must seek relief in the Court of Appeal for any issue regarding the imposition or calculation of fines, assessments, and fees, including, if necessary, by requesting leave to file a supplemental brief. (See Cal. Rules of Court, rule 8.200(a)(4).) The Court of Appeal then decides *all* the issues of the case, preventing piecemeal litigation in separate forums. (See *People v. Jordan* (2018) 21 Cal.App.5th 1136, 1142 [recognizing that section 1237.2 "mandate[s] that a defendant timely raise his [or her] penalty assessment claims to conserve judicial resources and efficiently present claims in a single forum"].)

Although the language of section 1237.2 is unambiguous regarding when a defendant is required to seek relief in the trial court in order to challenge the imposition or calculation of fines, assessments, and fees, we note the legislative history of section 1237.2 further supports our conclusion on this issue.

An analysis by the Assembly Committee on Public Safety regarding Assembly Bill 249, which led to the enactment of section 1237.2, discusses the reasons for the bill: "According to the author, '[w]hen a fines and fees error is the *sole issue* on appeal, trial and appellate courts incur significant costs and burdens associated with preparation of the formal record on appeal and resulting resentencing proceedings. AB 249 would prohibit a defendant from appealing a final conviction *solely* on the basis of an error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs, *unless the issue* is raised in the trial court at the time of sentencing. AB 249 would not prohibit defendants from seeking appeals on the grounds of any substantive concern, but rather

19

allow courts to handle the correction administratively.' "  (Assem. Com. on Pub. Safety, Rep. on Assem. Bill No. 249, as amended Mar. 17, 2015, p. 2, italics added.)

An analysis of the Assembly Committee on Appropriations regarding the fiscal effect of Assembly Bill 249 notes the "[m]inor costs to the Trial Courts to review requests for recalculations of fines, fees, and assessments, [are] likely more than offset by savings to the Appellate Courts and Trial Courts by eliminating appeals" based on such requests.  (Assem. Com. on Approp., Rep. on Assem Bill No. 249, as amended Apr. 15, 2015, p. 1.)

Finally, an analysis of the Senate Committee on Public Safety further recognizes the need for Assembly Bill 249 *if* the only issue to be appealed involves fines, assessments, and fees:  " 'The statutory scheme that governs the calculation of fines and other monetary penalties in California criminal cases is vast, complex, and frequently modified by the Legislature.  As a result, appellate courts are often called upon to correct the erroneous calculation of fines and other monetary penalties on appeal.'

"When a calculation error is the *sole issue* on appeal, trial and appellate courts incur significant costs and burdens associated with preparation of the formal record on appeal and resulting in resentencing proceedings."  (Sen. Com. on Pub. Safety, Rep. on. Assem Bill No. 249, as amended on Apr. 13, 2015, p. 3, italics added; see *Alexander*, *supra*, 6 Cal.App.5th at p. 801 [noting section 1237.2 broadly applies to an error in the imposition or calculation of fees and as such, "does not limit [its] reach only to situations where the fee simply did not apply at all or was a result of mathematical error"].)

20

In sum, we conclude the limited exception provided by section 1237.2 did not apply in this case because defendant's appeal is not limited to an error in the imposition or calculation of fines, assessments, and fees. As such, we further conclude defendant was required to submit that issue to this court for resolution, to be decided along with the others he raised on appeal.

This, however, does not end our analysis on the issue. In his supplemental brief, defendant alternately contended that, if the trial court lacked jurisdiction to hear and decide the motion to vacate as a result of his pending appeal, this court should reach the issue. (See Cal. Rules of Court, rule 8.200(a)(4) [noting no briefs other than an opening, respondent's, and reply "may be filed except with the permission of the presiding justice"].) We agree to treat his supplemental brief accordingly, and turn to the "imposition" issue next.

B. *Defendant Forfeited any Challenge to the Fines, Assessments, and Fees Imposed by the Trial Court*

Briefly, at sentencing the defense responded it had *no objection* to the fines, assessments, and fees recommended by probation, which the trial court then imposed as follows: a $10,000 restitution fine (§ 1202.4, subd. (b)(1)), and a suspended matching parole revocation fine (§ 1202.45); an $80 court security fee (§ 1465.8); a $60 Immediate

Critical Needs Account fee (Gov. Code, § 70373); and a $154 Criminal Administration Justice fee. (Gov. Code, § 29550.1.)[5]

As noted, defendant challenges the imposition of such fines, assessments, and fees on the basis of inability to pay, relying on *Dueñas*, *supra*, 30 Cal.App.5th 1157. We find his challenge unavailing and instead conclude he forfeited this claim of error.

Much has been written on *Dueñas* including by this court, making it unnecessary to review here the facts of, or the issues decided in, that case. It is sufficient to note that, unlike the probationer defendant in *Dueñas* who at her sentencing requested a separate inability-to-pay hearing before any fines or assessments were imposed (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1162), defendant in the instant case did not make such a request, and, when asked by the trial court, even stated during sentencing he had no objection to their imposition.

Moreover, the court in *Dueñas* imposed the statutory minimum restitution fine of $150 on defendant Dueñas. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1162; § 1202.4, subd. (b)(1).) In contrast, the court in the instant case imposed the statutory maximum fine of $10,000 on defendant. (See § 1202.4, subd. (b)(1).) Pursuant to section 1202.4, subdivisions (b)(1) and (c), the court is expressly prohibited from considering a defendant's ability to pay in imposing a restitution fine *unless* the fine imposed exceeds $300 for a felony, or $150 for a misdemeanor, conviction.

---

5    The court separately imposed on defendant a $300 restitution fine (§ 1202.4, subd. (b)(1)) and a suspended matching parole revocation fine in case No. SCD270678, which is not the subject of this appeal.

22

Thus, unlike defendant Dueñas, defendant here had the statutory right to object to $9,700 of the $10,000 restitution fine imposed by the court, but did not do so. As such, he has forfeited this claim of error on appeal. (See *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 (*Gutierrez*) [noting that "even before *Dueñas* a defendant had every incentive to object to imposition of a maximum restitution fine based on inability to pay because governing law as reflected in the statute (§ 1202.4, subd[s]. (c) [& (d)]) expressly permitted such a challenge"]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 [noting before *Dueñas*, an objection to a fine above the statutory minimum would not have been futile].)

We reach the same conclusion with respect to the remaining assessments and fees. As a practical matter, if defendant chose not to object to the $10,000 restitution fine based on inability to pay, he surely would not complain on similar grounds regarding an additional $294 in fees (i.e., $80 + $60 + $154). (See *Gutierrez*, *supra*, 35 Cal.App.5th at p. 1033.) In any event, unlike the probationer defendant in *Dueñas*, it is entirely appropriate to consider the wages defendant may earn in prison on the inability-to-pay issue. (See *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to pay may include a defendant's prison wages]; § 2085.5 [outlining how a restitution fine balance may be collected from prison wages].)[6]

---

6　Defendant in his supplemental briefing argued that, *if* the issue of inability to pay is deemed forfeited, as we have concluded, he was deprived effective assistance of counsel based on counsel's failure to object to the section 1202.4 restitution fine. We decline on this record to reach this issue, without prejudice to defendant raising the ineffective assistance of counsel issue in a separate proceeding, if he so chooses.

DISPOSITION

The judgment is conditionally reversed. The matter is remanded to the trial court with directions to conduct a diversion eligibility hearing under section 1001.36. If the court determines defendant qualifies for diversion under section 1001.36, then the court may grant diversion. If defendant successfully completes diversion, then the court shall dismiss the charges.

However, if the court determines defendant is ineligible for diversion, or defendant does not successfully complete diversion, then the court shall reinstate defendant's convictions and conduct a new sentencing hearing to consider whether to exercise its newly conferred discretion under amended sections 667, subdivision (a), and 1385, subdivision (b), to dismiss the punishment for one or more of defendant's prior serious felony convictions. In that circumstance, the court shall then prepare an amended abstract of judgment and forward a certified copy of it to the Department of Corrections and Rehabilitation.

BENKE, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.

24