Filed 3/12/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | S228230 |
| | ) | |
| v. | ) | Ct.App. 4/1 D065961 |
| | ) | |
| VERONICA LORRAINE DEHOYOS et al., | ) | San Diego County |
| | ) | Super. Ct. No. SCD252670 |
| Defendants and Appellants. | ) | |
| _____ | ) | |

Approved by voters in 2014, Proposition 47 ("The Safe Neighborhoods and Schools Act" (Proposition 47)) reduces many common theft- and drug-related offenses from felonies to misdemeanors for offenders who do not have prior convictions for specified violent or serious offenses. The measure also permits eligible defendants who were serving felony sentences as of Proposition 47's effective date to obtain the benefit of these changes by petitioning for resentencing. (Pen. Code, § 1170.18, subd. (a), as amended by Stats. 2016, ch. 767, § 1, p. 5313.) A court must grant a resentencing petition unless the court determines that resentencing the defendant "would pose an unreasonable risk of danger to public safety." (Pen. Code, § 1170.18, subd. (b).)

The question before us concerns the application of these provisions to defendants who were serving felony sentences on the measure's effective date but whose judgments were on appeal and thus not yet final. Are such defendants entitled to automatic resentencing under Proposition 47, or must they instead seek resentencing through the statutory resentencing procedure, including the risk

assessment prescribed by Penal Code section 1170.18, subdivision (b)? We conclude that resentencing is available to such defendants only in accordance with the statutory resentencing procedure in Penal Code section 1170.18 (section 1170.18).

## I.

## A.

Proposition 47 was passed by voters at the November 4, 2014, General Election, and took effect the following day. The measure's stated purpose was "to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K–12 schools, victim services, and mental health and drug treatment," while also ensuring "that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70 (Voter Information Guide).) To these ends, Proposition 47 redefined several common theft- and drug-related felonies as either misdemeanors or felonies, depending on the offender's criminal history. The redefined offenses include: shoplifting of property worth $950 or less (Pen. Code, § 459.5, subd. (a)); forgery of instruments worth $950 or less (Pen. Code, § 473, subd. (b)); fraud involving financial instruments worth $950 or less (Pen. Code, § 476a, subd. (b)); theft of, or receiving, property worth $950 or less (Pen. Code, §§ 490.2, subd. (a), 496, subd. (a)); petty theft with a prior theft-related conviction (Pen. Code, § 666, subd. (a)); and possession of a controlled substance (Health & Saf. Code, §§ 11350, subd. (a), 11377, subd. (a)). While these offenses are now misdemeanors by default, they remain felonies for offenders who have previously been convicted of certain serious or violent crimes colloquially known as "super strikes" (see Pen. Code, § 667, subd. (e)(2)(C)(iv)(I)–(VIII); see also *People v. Valencia* (2017) 3 Cal.5th

2

347, 351 & fn. 3), or of a crime that requires registration as a sex offender (see Pen. Code, § 290, subd. (c)).[1]

Proposition 47 also includes two sets of detailed provisions setting out the terms under which retrospective relief is available to persons who were serving, or who had already completed, felony sentences for offenses now redefined as misdemeanors. This case concerns the first of these retrospective provisions, which provides: "A person who, on November 5, 2014, was serving a sentence for a conviction . . . of a felony . . . who would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance" with the new misdemeanor penalty provisions. (§ 1170.18, subd. (a), as amended by Stats. 2016, ch. 767, § 1, p. 5313, eff. Jan. 1, 2017.) Petitions for recall were initially to be filed within a three-year window, absent a showing of good cause; the Legislature has since extended that window to November 4, 2022. (§ 1170.18, subd. (j), as amended by Stats. 2016, ch. 767, § 1, p. 5314, eff. Jan. 1, 2017.)[2]

---

[1] Proposition 47 also redefined possession of cannabis or concentrated cannabis as a misdemeanor or felony, depending on the offender's criminal history. (See Health & Saf. Code, former § 11357, subd. (a), as amended by Prop. 47, § 12, and subsequently amended.) Subsequent amendments, however, have partly decriminalized possession of cannabis and redefined the conduct still prohibited as either an infraction or a misdemeanor. (See Health & Saf. Code, § 11357, as amended by Stats. 2017, ch. 253, § 15, pp. 2351–2352, eff. Sept. 16, 2017.)

[2] Section 1170.18, as adopted by the voters, permitted "[a] person *currently serving a sentence*" to petition for recall of sentence, and required that recall petitions be filed "*within three years* after the effective date" of Proposition 47. (Former § 1170.18, subds. (a), (j), as added by Prop. 47, § 14, and subsequently amended (italics added).) Both provisions were later amended by the Legislature. (Stats. 2016, ch. 767, § 1, pp. 5313–5314, eff. Jan. 1, 2017.)

Only defendants who do not have disqualifying prior convictions may file petitions for recall of sentence. (§ 1170.18, subds. (a), (i).) If the statutory requirements are satisfied, "the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id.*, subd. (b).) For these purposes, " 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a" super strike or crime requiring sex offender registration. (*Id.*, subd. (c).) In making this determination, "the court may consider" the petitioner's "criminal conviction history," "disciplinary record and record of rehabilitation while incarcerated," and "[a]ny other evidence" the court "determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (*Id.*, subd. (b), (b)(1)–(3).)

Proposition 47 also provides a path to relief for persons who have already completed a sentence for a covered offense: Such a person "may file an application before the trial court that entered the judgment of conviction in his or her case to have the felony conviction or convictions designated as misdemeanors." (§ 1170.18, subd. (f).) Like recall petitions, such applications must be filed by November 4, 2022, absent good cause to file at a later date. (*Id.*, subd. (j), as amended by Stats. 2016, ch. 767, § 1, p. 5314, eff. Jan. 1, 2017.) As is true of Proposition 47's other provisions for reducing a felony to a misdemeanor, no relief is available to a person who has previously been convicted of a super strike or an offense requiring registration as a sex offender. (§ 1170.18, subd. (i).) If such an applicant satisfies the statutory requirements, the court must designate the felony offense as a misdemeanor. (*Id.*, subd. (g).) No hearing is required unless the applicant asks for one. (*Id.*, subd. (h).)

4

**B.**

In December 2013, police officers arrested defendant Veronica Lorraine DeHoyos for possessing methamphetamine, a controlled substance. At that time, the offense was punishable as a felony by former section 11377 of the Health and Safety Code (Stats. 2011, ch. 15, § 171, p. 325, and subsequently amended). In April 2014, a jury found defendant guilty of violating former section 11377, subdivision (a), and the San Diego Superior Court suspended imposition of sentence and granted formal probation for three years.[3]

Defendant appealed. On appeal, defendant invoked the then-newly enacted provisions of Proposition 47. As noted, the measure redefined possession of a controlled substance as a misdemeanor except for offenders who have disqualifying prior convictions. (Health & Saf. Code, § 11377, subd. (a), as amended by Prop. 47, § 13.) Noting that the record established no disqualifying prior convictions, defendant argued that the Court of Appeal should reduce her conviction to a misdemeanor and remand for resentencing without following the procedures set out in section 1170.18. The Court of Appeal rejected her argument

---

[3]      Neither party suggests defendant's status as a probationer, rather than a prisoner, affects the proper resolution of the question before us. Courts of Appeal to consider the issue have held, based on Proposition 47's structure, purpose, and history, that a probationer is "serving a sentence" for purposes of section 1170.18, subdivision (a). (See *People v. Bastidas* (2017) 7 Cal.App.5th 591, 595, 598–606; *People v. Garcia* (2016) 245 Cal.App.4th 555, 557–559; *People v. Lewis* (2016) 4 Cal.App.5th 1085, 1093–1094 [postrelease community supervision]; cf. *People v. Moran* (2016) 1 Cal.5th 398, 401 [referring to the "sentence of probation"]; *People v. Lightsey* (2012) 54 Cal.4th 668, 677 [same]; *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 210 [same]; Voter Information Guide, Gen. Elec. (Nov. 4, 2014), analysis of Prop. 47 by Legis. Analyst, p. 34 ["[f]elony offenders who have no current or prior convictions for serious, violent, or sex offenses are typically sentenced to county jail or the supervision of a county probation officer in the community, or both"].)

and affirmed the judgment.  "[T]o be considered for resentencing," the court held, defendant "must utilize the [statutory] procedure . . . ."

## II.

The question before us is how Proposition 47 applies to those who, like defendant, had been sentenced for a covered offense before November 5, 2014, but whose judgments were not yet final on that date, and whose sentences have not yet been completed.  The Attorney General contends that resentencing is available exclusively under section 1170.18, which conditions relief on the court's assessment of "whether a new sentence would result in an unreasonable risk of danger to public safety."  (*Id.*, subd. (b)(3).)  Defendant, on the other hand, argues that the reviewing court should reduce her offense to a misdemeanor and remand the case for resentencing without the statutory risk assessment.

Defendant's argument relies on the principle articulated in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*):  "[A]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date" (*People v. Floyd* (2003) 31 Cal.4th 179, 184, citing *Estrada*, at p. 744), unless the enacting body "clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent" (*People v. Nasalga* (1996) 12 Cal.4th 784, 793; see *Estrada*, at p. 747).  This rule rests on an inference that when the Legislature has reduced the punishment for an offense, it has determined the "former penalty was too severe" (*Estrada*, at p. 745) and therefore "must have intended that the new statute imposing the new lighter penalty . . . should apply to every case to which it constitutionally could apply" (*ibid.*).  *Estrada* itself involved an offense committed before, and tried to conviction after, the ameliorative statute took effect.  (*Id.*, at pp. 743–744.)  In a companion case to *Estrada*, we held the same presumption

6

governed in a case in which the new statute had taken effect while a criminal conviction was pending on appeal. (*In re Kirk* (1965) 63 Cal.2d 761, 762–763.)

In the decades since *Estrada* was decided, we have clarified that the absence of an express savings clause does not necessarily resolve the question whether a lawmaking body intended a statute reducing punishment to apply retrospectively. "[W]hile such express statements unquestionably suffice to override the *Estrada* presumption," we have explained, "the 'absence of an express saving clause . . . does not end "our quest for legislative intent." ' " (*People v. Conley* (2016) 63 Cal.4th 646, 656 (*Conley*), quoting *People v. Nasalga*, *supra*, 12 Cal.4th at p. 793, quoting *In re Pedro T.* (1994) 8 Cal.4th 1041, 1049.) This is because "[o]ur cases do not 'dictate to legislative drafters the forms in which laws must be written' to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the [legislative body] demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' " (*Conley*, *supra*, 63 Cal.4th at pp. 656–657, quoting *In re Pedro T.*, *supra*, 8 Cal.4th at pp. 1048–1049.)

Proposition 47 contains no express savings clause. It does, however, address the question of retrospective application in conspicuous detail. Separate provisions articulate the conditions under which the new misdemeanor penalty provisions apply to completed sentences (§ 1170.18, subds. (f)–(j)), sentences still being served (*id.*, subds. (a)–(e)), and sentences yet to be imposed (Pen. Code, §§ 459.5, subd. (a), 473, subd. (b), 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (a); Health & Saf. Code, §§ 11350, subd. (a), 11377, subd. (a)). The question is whether these provisions sufficiently demonstrate the electorate's intent concerning whether defendants who were sentenced before Proposition 47's effective date, but whose judgments were not yet final, are entitled to automatic resentencing, or must instead petition for resentencing under section 1170.18.

7

We considered a similar question in *Conley*, *supra*, 63 Cal.4th 646. That case concerned the Three Strikes Reform Act of 2012 (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012); hereafter Reform Act), which prospectively ameliorated sentencing under the statutes collectively known as the "Three Strikes" law. (Pen. Code, §§ 667, subds. (b)–(j), 1170.12.) The Reform Act also offered a possibility of resentencing to third strike prisoners who were currently serving indeterminate life terms for offenses that, if committed after the Act's effective date, would no longer support life terms. The Act's resentencing provision, Penal Code section 1170.126, permitted "[a]ny person serving an indeterminate term of life imprisonment . . . [to] file a petition for a recall of sentence . . . [and] to request resentencing in accordance with" the new, ameliorated penalty provisions. (*Id.*, subd. (b).) This statute, like Proposition 47's resentencing provision (§ 1170.18), also conditioned relief on the court's determination whether resentencing "would pose an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (f).)[4]

The issue in *Conley*, *supra*, 63 Cal.4th 646, was whether life prisoners whose judgments were not final on the Reform Act's effective date could obtain relief only under the Act's resentencing provision (Pen. Code, § 1170.126), or whether they were entitled to be resentenced automatically because of the *Estrada* presumption that laws ameliorating punishment apply to nonfinal sentences. We concluded that the resentencing provision was the exclusive avenue for resentencing of persons who had been sentenced before Proposition 36's effective date. Three considerations led us to this conclusion.

---

**4** In *People v. Valencia*, *supra*, 3 Cal.5th at page 375, this court held that the specialized definition of " 'unreasonable risk of danger to public safety' " in Proposition 47 does not apply in resentencing proceedings under the earlier-enacted Proposition 36.

First, we explained, "unlike the statute at issue in *Estrada*, *supra*, 63 Cal.2d 740, the Reform Act [was] not silent on the question of retroactivity. Rather, the Act expressly addresse[d] the question in [its resentencing provision], the sole purpose of which is to extend the benefits of the Act retroactively." (*Conley*, *supra*, 63 Cal.4th at p. 657; see Pen. Code, § 1170.126.) That provision, we noted, "dr[ew] no distinction between persons serving final sentences and those serving nonfinal sentences, entitling both categories of prisoners to petition courts for recall of sentence under the Act." (*Conley*, *supra*, at p. 657.) Moreover, we explained, "the nature of the [Reform Act's] recall mechanism and the substantive limitations it contains call[ed] into question the central premise underlying the *Estrada* presumption," namely, that the lawmaking body had "categorically determined that 'imposition of a lesser punishment' will in all cases 'sufficiently serve the public interest.' " (*Conley*, at p. 658, quoting *In re Pedro T.*, *supra*, 8 Cal.4th at p. 1045.) We emphasized that, instead of mandating lesser punishment in all cases, voters had conditioned relief on a judicial assessment of the risk that resentencing would pose to public safety. (Pen. Code, § 1170.126, subd. (f); see *Conley*, at p. 658.) Finally, we noted, our understanding of the recall mechanism was reinforced by consideration of the remainder of the statutory scheme. We noted the sentencing provisions of the Reform Act had established a new set of factors related to the nature of the defendant's current offense that must be " 'plead[ed] and prov[ed]' by the prosecution." (*Conley*, at p. 659, quoting Pen. Code, § 1170.12, subd. (c)(2)(C).) The Reform Act did not, however, specify how that requirement was to be satisfied in the case of a defendant who had already been sentenced. This omission, we concluded, reinforced the conclusion that voters had not contemplated that previously sentenced defendants would be resentenced automatically under these new sentencing procedures, but instead contemplated that such defendants would seek relief under the Reform Act's

9

resentencing provision, which contained no comparable pleading-and-proof requirements. (*Conley*, at pp. 660–661.)

Similar considerations lead us to a similar conclusion in this case. Like the Reform Act, Proposition 47 is an ameliorative criminal law measure that is "not silent on the question of retroactivity," but instead contains a detailed set of provisions designed to extend the statute's benefits retroactively. (*Conley*, *supra*, 63 Cal.4th at p. 657.) Those provisions include, as relevant here, a recall and resentencing mechanism for individuals who were "serving a sentence" for a covered offense as of Proposition 47's effective date. (§ 1170.18, subd. (a).) Like the parallel resentencing provision of the Reform Act, section 1170.18 draws no express distinction between persons serving final sentences and those serving nonfinal sentences, instead entitling both categories of prisoners to petition courts for recall of sentence. (*Ibid*.) And like the resentencing provision of the Reform Act, section 1170.18 expressly makes resentencing dependent on a court's assessment of the likelihood that a defendant's early release will pose a risk to public safety, undermining the idea that voters "categorically determined that 'imposition of a lesser punishment' will in all cases 'sufficiently serve the public interest.' " (*Conley*, at p. 658; see § 1170.18, subd. (b).)

Proposition 47, unlike the Reform Act, does not create new sentencing factors that the prosecution must "plead[] and prove[]" (Pen. Code, § 1170.12, subd. (c)(2)(C)) to preclude a grant of leniency. We can therefore draw no inferences from the omission of any provision addressing the application of such a pleading-and-proof requirement to individuals who have already been sentenced, as we did in *Conley*. But our conclusion is strongly reinforced by other indicia of legislative intent. In enacting Proposition 47, voters declared their purpose to "[r]equire a thorough review of criminal history and risk assessment of *any individuals* before resentencing to ensure that they do not pose a risk to public

10

safety." (Voter Information Guide, *supra*, text of Prop. 47, § 3(5), p. 70, italics added.) The breadth of this statement of purpose indicates an intent to apply the provisions of section 1170.18, including its risk assessment provision, to all previously sentenced defendants who had not yet completed their sentences, and not just to those whose judgments had become final on direct review. (See *People v. Canty* (2004) 32 Cal.4th 1266, 1280 [courts may consider "statements of the intent of the enacting body contained in a preamble" as an "aid in construing a statute"].)

Defendant raises several objections to this conclusion, but none has merit. First, she argues that section 1170.18, unlike the resentencing provision of the Reform Act, is ambiguous about whether it applies to defendants who were serving nonfinal sentences as of Proposition 47's effective date. She contends that this ambiguity should be resolved in favor of concluding that such defendants are not entitled to file petitions for resentencing under section 1170.18. And if defendants are not entitled to resentencing under section 1170.18, she reasons, they must be entitled to automatic resentencing in accordance with the *Estrada* presumption.

This argument fails at the first step. Section 1170.18 authorizes a defendant who was "serving a sentence" for a covered offense as of November 5, 2014, to file a petition for recall of sentence. (*Id*., subd. (a).) As a matter of ordinary usage, we say that a defendant begins to serve a sentence after the sentence is imposed; the terminology does not vary depending on whether the sentence the defendant is serving has become final on direct review. (See *Conley*, *supra*, 63 Cal.4th at p. 655.) And defendant points to nothing in Proposition 47 that would suggest that the voters were using the phrase "serving a sentence" in a different, idiosyncratic way. On the contrary, Proposition 47's assertion of a purpose to apply the provisions of section 1170.18 to "*any individuals* before resentencing"

11

strongly suggests that voters understood that section 1170.18 would apply to all previously sentenced defendants who seek resentencing, regardless of whether their judgments have become final on direct review. (Voter Information Guide, *supra*, text of Prop. 47, § 3(5), p. 70, italics added.)

It certainly is true, as defendant says, that section 1170.18, subdivision (a)'s reference to those defendants "serving a sentence" for a covered offense operates to distinguish them from other defendants who have already completed their sentences and are therefore entitled to relief under a separate provision. (§ 1170.18, subd. (f).) But it does not follow that we can read "serving a sentence" as though it instead read "serving a *final* sentence," as defendant argues—a conclusion that would require us to insert language that Proposition 47's drafters did not see fit to include. (See *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1108.)

Defendant next contends our interpretation of the Reform Act in *Conley*, *supra*, 63 Cal.4th 646, sheds no light on the proper interpretation of Proposition 47 because the two initiatives have different ameliorative goals. The Reform Act, she argues, was presented to the voters as intended " 'to restore the original intent of California's Three Strikes Law,' " "whereas the electorate's intent in enacting Proposition 47 was a classic (and wide-scale) reduction in sentencing" that amounts to a "never-before-seen sea change in California criminal jurisprudence." It is unclear what lesson defendant would have us derive from this comparison. The Reform Act and Proposition 47 do, of course, affect different categories of offenders in various ways. (See *People v. Valencia*, *supra*, 3 Cal.5th at p. 376 [Props. 36 and 47 address "two very different populations of offenders"].) But our holding here, like our conclusion in *Conley*, depends on a conclusion about the intended operation of a statutory scheme that provides a particular mechanism for

12

the retroactive application of the ameliorative changes the measures brought about; it does not depend on the relative scope or scale of those changes.

Defendant also briefly suggests that the voters who passed the Reform Act were more concerned with public safety than the voters who passed Proposition 47; the latter group, defendant argues, placed a greater emphasis on cost savings and on the reduction of punishment for individuals with low-level felony convictions. As support for this conclusion, defendant points to cases that have observed that Proposition 47 prescribes less demanding substantive requirements for eligibility for relief than does the Reform Act. (See, e.g., *People v. Buford* (2016) 4 Cal.App.5th 886, 908–909.) Again, there are certainly differences between the two statutory schemes. But in the respect relevant to our analysis here, the statutory schemes operate in much the same way: Both require a previously sentenced defendant to seek relief through a petition for resentencing, and both require a court to consider the impact on public safety before granting the petition. Defendant's proposed interpretation of Proposition 47 would create an exception to this rule the voters apparently did not intend. (Voter Information Guide, *supra*, text of Prop. 47, § 3(5), p. 70.)

Finally, defendant calls our attention to language in Proposition 47 intended to guide the measure's judicial interpretation. Section 1170.18 provides that "[t]his section does not diminish or abrogate any rights or remedies otherwise available to the petitioner or applicant." (*Id.*, subd. (m); see former § 1170.18, subd. (m), as added by Prop. 47 [similar].) Defendant asserts that one of the "rights or remedies" (*ibid.*) available to her is automatic resentencing under *Estrada* and *Kirk*. But these cases describe a presumption about legislative intent to guide our understanding of the retroactive reach of the statute; they do not establish substantive rights. (See *Conley*, *supra*, 63 Cal.4th at pp. 661–662.) And as we have previously explained, subdivision (m) "protects a person 'from being

13

forced to choose between filing a petition for a recall of sentence and pursuing other legal remedies to which they might be entitled (e.g., petition for habeas corpus).' " (*People v. Morales* (2016) 63 Cal.4th 399, 408.)  Subdivision (m) itself does not create an entitlement to resentencing outside of the petition process, without regard to the substantive requirements the voters prescribed in section 1170.18.  Defendant points to uncodified provisions of Proposition 47 that direct courts to construe the measure "broadly" and "liberally . . . to effectuate its purposes" (Voter Information Guide, *supra*, text of Prop. 47, §§ 15, 18, p. 74).  But consideration of this general interpretive direction does not relieve us of our obligation to " ' " 'follow the [voters'] intent, as exhibited by the plain meaning of the actual words of the law . . . .' " ' " (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 312; see *People v. Martinez* (2017) 2 Cal.5th 1093, 1107.)

### III.

The judgment of the Court of Appeal is affirmed.


**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**NEEDHAM, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. DeHoyos

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 238 Cal.App.4th 263
**Rehearing Granted**

_____

**Opinion No.** S228230
**Date Filed:** March 12, 2018

_____

**Court:** Superior
**County:** San Diego
**Judge:** Peter C. Deddeh, Gale E. Kaneshiro and Lisa C. Schall

_____

**Counsel:**

Leslie Ann Rose, under appointment by the Supreme Court, Valerie G. Wass, under appointment by the Court of Appeal, and Howard C. Cohen for Defendant and Appellant Veronica Lorraine DeHoyos.

Lewis A. Wenzell, under appointment by the Supreme Court, for Defendant and Appellant Gary Richard DeGraff.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting, Deputy State Solicitor General, Lise Jacobson, Arlene A. Sevidal, Sean M. Rodriquez and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Howard C. Cohen
Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA  92101-2939
(619) 696-0282

Allison V. Acosta
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 738-9111