Filed 3/9/20

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E070980 |
| v. | (Super.Ct.No. RIF1303884) |
| OMAR JESUS CERVANTES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed as modified.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

Omar Jesus Cervantes appeals his conviction for second degree murder, arguing it must be reversed under the recently enacted Senate Bill No. 1437 (SB 1437) and the changes the new law made to the natural and probable consequences doctrine. SB 1437 amended the murder statutes (Pen. Code, §§ 188 & 189; unlabeled statutory citations refer to this code) to modify the definition of murder and created a new provision— section 1170.95—which establishes procedures for eligible defendants to seek resentencing under the new definition. We conclude Cervantes cannot raise his SB 1437 claim on direct appeal, but must follow the procedures in section 1170.95 and petition the superior court for relief.

Cervantes also raises multiple challenges to his sentence. As we explain below, to clear up confusion about the particulars of his sentence, we will direct the trial court to correct the July 20, 2018 minute order to reflect that it did not impose a gang enhancement on the murder count or a section 1203.1c presentence confinement fee. We will also direct the court to correct the abstract of judgment to reflect that it did not impose a registration requirement. In all other respects, we will affirm the judgment.

## I

## FACTS

The Riverside County District Attorney charged Cervantes with murder (§ 187, subd. (a), count 1) and assault with a deadly weapon (a wooden bat) (§ 245, subd. (a)(1)), both committed for the benefit of a gang (§ 186.22, subd. (b)(1)). As to the murder count,

2

the information alleged Cervantes was a principal who personally used a firearm causing great bodily injury and death. (§ 12022.53, subds. (d)-(e).)

At trial, the prosecution presented evidence that Cervantes was hanging out in Moreno Valley with members of his gang, 420 Kings, when he planned and directed the murder of Marquez, a member of the rival gang Kush Blown Kings. The 17-year-old Cervantes was driving his father's car with one of his friends, when he saw the victim, Marquez, walking down the street. Cervantes picked up his fellow gang members, codefendants Mageo and Mariscal, at a local park. Cervantes knew Mariscal had a gun and drove Mariscal to his house to retrieve it. Afterward, they drove around looking for Marquez and found him walking back from Circle K with two friends, carrying soda and snacks.

Cervantes ordered Mariscal to "rob" and "shoot" Marquez. At trial, there was conflicting evidence about whether the other passengers in the car believed Cervantes wanted Mariscal to shoot Marquez or simply beat him and scare him with the gun. Cervantes remained in the driver's seat as Mariscal and Mageo jumped out of the car, Mariscal carrying his gun and Mageo carrying a small wooden bat. They chased Marquez and his friends to a nearby residence where Marquez and one of his friends ran into the open garage. Mageo caught up with the friend in the garage and began beating him with the bat. Mariscal ran after the other friend, and when he realized he wasn't Marquez, said, "that's not him," and doubled back to the garage. Mariscal found Marquez and shot him in the torso, killing him.

3

When Mariscal returned to the car, Cervantes was standing outside the driver's door. He pointed at one of Marquez's friend's and told Mariscal to "kill that motherfucker too." Instead, Mariscal climbed into the backseat and announced he "got" Marquez. Cervantes asked whether Mariscal "really did get him," then started "bragging it up." They left the scene and Cervantes drove Mariscal back to his house to get rid of the gun.

At trial, the prosecution argued Cervantes was guilty of murder under two alternative theories. They argued he aided and abetted Mariscal's shooting of Marquez, or, at the very least, aided and abetted Mariscal's assaulting Marquez with a firearm, and murder was a natural and probable consequence of that assault.

The jury convicted Cervantes of second degree murder and assault with a deadly weapon, found both crimes were committed for the benefit of a gang, but did not find the gun enhancement true. The trial court sentenced Cervantes to 15 years to life for the murder. For the assault, it imposed a consecutive sentence of nine years, consisting of the upper term of four years plus a five-year enhancement for the gang allegation. The trial court also imposed the following fines and fees: a maximum of $1,095 for the costs of the probation report; a $514.58 booking fee; a $300 restitution fine (Pen. Code, § 1202.45, subd. (c)); an $80 court operations fee (Pen. Code, § 1465.8); and a $60 conviction fee (Gov. Code, § 70373).[1]

---

[1] The court also imposed, but suspended, a $300 parole revocation fine. (§ 1202.45.)

# II

# ANALYSIS

A.     *SB 1437*

SB 1437 modified California's felony murder rule and natural and probable consequences doctrine to ensure murder liability is not imposed on someone unless they were the actual killer, acted with the intent to kill, or acted as a major participant in the underlying felony and with reckless indifference to human life. (Stats. 2018, ch. 1015, § 4; § 1170.95, subd. (a)(3).) SB 1437 became effective on January 1, 2019, after Cervantes's conviction but before he filed his opening brief. He argues that because the legislation went into effect while his appeal was pending, he is entitled to a reversal of his murder conviction in this appeal based on the retroactive application of these changes under the rule articulated in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). Under the *Estrada* rule, "'[a]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date' [citation], unless the enacting body 'clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent.'" (*People v. DeHoyos* (2018) 4 Cal.5th 594, 600 (*DeHoyos*).)

We agree with the three other appellate decisions to address this issue—*People v. Martinez* (2019) 31 Cal.App.5th 719 (*Martinez*) from Division Five of the Second District, *People v. Anthony* (2019) 32 Cal.App.5th 1102 (*Anthony*) from Division Two of the First District, and *People v. Carter* (2019) 34 Cal.App.5th 831 (*Carter*) from Division

One of the Fourth District—that the petitioning process in section 1170.95 is the exclusive means of obtaining relief under SB 1437 for defendants in Cervantes's position. Relief under the new law defining murder is not automatic. Because Cervantes's entitlement to relief will depend on the presentation of new evidence and the resolution of factual issues, the superior court, not the appellate court, is the proper first venue for his claim.

Put another way, we conclude the *Estrada* rule is not implicated on these facts. That rule, or more aptly, presumption, applies when the Legislature is silent as to whether it intended an amendment or change in the law to operate only prospectively. (*Estrada*, *supra*, 63 Cal.2d at p. 744; see also *People v. Nasalga* (1996) 12 Cal.4th 784, 793 [presumption not triggered "where the Legislature clearly signals its intent to make the amendment prospective"].) Here, the Legislature was not silent as to the class of offenders to which SB 1437 applies. We conclude section 1170.95's petition process provides a clear indication of our lawmakers' intent regarding the retroactive effect of the new definition of murder. Those who suffered convictions for murder under the felony murder rule or natural and probable consequences doctrine before SB 1437's enactment can obtain relief under the new law, but only through the petition process.

1. *The new law's provisions*

SB 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was

6

not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To accomplish this, SB 1437 modified section 188, which defines malice, and section 189, which defines the degrees of murder, and now addresses felony murder liability. Under the new definition of murder, malice may no longer be imputed to a defendant under the felony murder rule or on the sole ground that the victim died as a natural and probable consequence of a designated crime. SB 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).)

Such an offender may file a petition under section 1170.95 where three conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).)

The section 1170.95 petition must include, among other things, a declaration by the petitioner stating they are eligible for relief based on all three aforementioned requirements of subdivision (a). The trial court "shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) If the petitioner has made such a showing, the trial court must then hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and [is eligible] for resentencing. If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (§ 1170.95, subd. (d)(2).)

Notably, if there is a hearing, "[t]he prosecutor and the petitioner may rely on the record of conviction *or offer new or additional evidence* to meet their respective burdens." (§ 1170.95, subd. (d)(3), italics added.) "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction,

8

and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid*.)

### 2. Conley *and* DeHoyos

The *Martinez* and *Anthony* courts analogized the petitioning process in newly enacted section 1170.95 to the postconviction procedures created by Propositions 36 and 47. As a result, they concluded the California Supreme Court opinions *People v. Conley* (2016) 63 Cal.4th 646 (*Conley*) and *DeHoyos*—in which the Court held those procedures were the exclusive remedy available to defendants with nonfinal convictions and the *Estrada* rule did not apply to Proposition 36 and Proposition 47, respectively.[2] We agree.

In *Conley*, our Supreme Court articulated three reasons for holding that Proposition 36's postconviction procedures (codified in § 1170.126) are the exclusive means for seeking relief under that initiative. "First, Proposition 36 was 'not silent on the question of retroactivity' but instead 'expressly addresse[d] the question in section 1170.126, the sole purpose of which is to extend the benefits of [Proposition 36] retroactively." (*Conley, supra*, 63 Cal.4th at p. 657.) "In doing so, Proposition 36 did not distinguish between persons serving final sentences and those serving nonfinal sentences." (*Martinez, supra*, 31 Cal.App.5th at p. 726.)

"Second, Proposition 36 made resentencing contingent on a court's evaluation of a defendant's dangerousness. Conferring an automatic entitlement to resentencing on

---

[2] *Carter* was only partially published—and while the court did publish its holding that the defendants "cannot raise their claims in this appeal; they must first petition the superior court for relief under section 1170.95" (*Carter, supra*, 34 Cal.App.5th at p. 835) —it did not publish its analysis of the issue.

defendants whose cases were still pending on direct appeal would not allow courts to conduct that inquiry, and the court found no basis to hold the electorate intended 'for courts to bypass the public safety inquiry altogether in the case of defendants serving sentences that are not yet final.'" (*Martinez*, *supra*, 31 Cal.App.5th at p. 726, quoting *Conley*, *supra*, 63 Cal.4th at pp. 658-659.)

"Third, the changes in law worked by Proposition 36 not only reduced previously prescribed criminal penalties but also established 'a new set of disqualifying factors that preclude a third strike defendant from receiving a second strike sentence,' factors that the prosecution was required to plead and prove. [Citation.] Because Proposition 36 did not address the complexities involved in applying the pleading-and-proof requirements to previously sentenced defendants, the Court concluded the electorate did not contemplate those provisions would apply to previously sentenced defendants. [Citation] Rather, they intended such defendants to seek relief under section 1170.126, which did not contain pleading-and-proof requirements." (*Martinez*, *supra*, 31 Cal.App.5th at p. 726, quoting *Conley*, *supra*, 63 Cal.4th at pp. 659-661.)

Our Supreme Court reached a similar result in *DeHoyos*, holding *Estrada* did not apply to Proposition 47 and the petitioning procedure in section 1170.18 was the exclusive remedy for offenders who were convicted of felonies that are now classified as misdemeanors. It explained that Proposition 47, like Proposition 36, is "an ameliorative criminal law measure that is 'not silent on the question of retroactivity,' but instead

10

contain[ed] a detailed set of provisions designed to extend the statute's benefits retroactively." (*DeHoyos*, *supra*, 4 Cal.5th at p. 603.)

"As it did in *Conley* when analyzing Proposition 36, the *DeHoyos* court found it significant that Proposition 47's recall of sentence petitioning mechanism drew 'no express distinction between persons serving final sentences and those serving nonfinal sentences, instead entitling both categories of prisoners to petition courts for recall of sentence' and 'expressly ma[king] resentencing dependent on a court's assessment of the likelihood that a defendant's early release will pose a risk to public safety, undermining the idea that voters "categorically determined that 'imposition of a lesser punishment' will in all cases 'sufficiently serve the public interest.'"'" (*Martinez*, *supra*, 31 Cal.App.5th at p. 727.) In addition, *DeHoyos* concluded Proposition 47's broad statement of purpose, revealed the initiative's petitioning procedure was meant to be the exclusive avenue for retroactive relief for all previously sentenced defendants, whether or not their sentences were final. (*DeHoyos*, *supra*, 4 Cal.5th at p. 603.)

The Supreme Court's analysis in *Conley* and *DeHoyos* applies with equal force in the context of SB 1437 and section 1170.95. Like Propositions 36 and 47, SB 1437 is not silent regarding retroactivity. Rather, it created a detailed petitioning process for obtaining relief, a process which does not distinguish between persons with final and nonfinal sentences. "That the Legislature specifically created this mechanism, which facially applies to both final and nonfinal convictions, is a significant indication Senate Bill 1437 should not be applied retroactively to nonfinal convictions on direct appeal."

11

(*Martinez*, *supra*, 31 Cal.App.5th at p. 727.) Section 1170.95's allowance for the presentation of new evidence to demonstrate whether a petitioner is eligible for relief is further evidence the Legislature did not intend to make relief eligible on direct appeal, as appellate courts are not equipped to accept new evidence and make factual findings. It is clear the Legislature did not make entitlement to relief automatic. They intended it to depend on factual findings made by trial courts.

Pointing to section 1170.95, subdivision (f), which states, "This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner," Cervantes argues the Legislature intended to leave the avenue of direct appeal open to defendants in his position. *Conley* rejected a similar argument concerning an analogous provision in Proposition 36, reasoning the provision "contain[ed] no indication that automatic resentencing—as opposed to, for example, habeas corpus relief—ranks among the 'rights' the electorate sought to preserve." (*Conley*, *supra*, 63 Cal.4th at p. 661.) We reach the same conclusion here, where there is similarly no indication in section 1170.95 that reversal of a defendant's sentence on direct appeal without compliance with the procedures outlined in section 1170.95 was among the rights the Legislature sought to preserve in enacting SB 1437. (See *Martinez*, *supra*, 31 Cal.App.5th at p. 729 [accord]; *Anthony*, *supra*, 32 Cal.App.5th at p. 1157 [accord].) Put differently, Cervantes's claim on appeal does not rely on a different remedy otherwise available. His claim relies solely on the remedy set forth in SB 1437, which requires him to file a section 1170.95 petition.

Cervantes argues we should reverse his murder conviction on the "independent" ground that the trial court erred by instructing the jury on the natural and probable consequences doctrine as it was defined prior to the effective date of SB 1437. This is simply a roundabout way of rearguing that *Estrada's* retroactivity rule applies to SB 1437. The natural and probable consequences instruction was correct when the trial court gave it, and SB 1437 does not apply retroactively to make the instruction erroneous. Instead, SB 1437 creates a procedure for Cervantes to challenge, and the People to defend, his murder conviction in a new hearing before the trial court.

At oral argument, counsel for Cervantes argued that the recent opinion *People v. Medrano* (2019) 42 Cal.App.5th 1001 supports applying the *Estrada* rule to his case and allowing him to challenge his conviction on appeal. Cervantes's reliance on *Medrano* is misplaced. That case involved defendants who had been convicted of attempted murder and argued that SB 1437's amendment to the definition of murder applied to their offenses as well. Our colleagues in the Fifth District agreed with the defendants that the new law's changes applied equally to the crime of attempted murder, but the court also concluded that the petitioning process in section 1170.95 "is limited to certain murder convictions and excludes all other convictions," like attempted murder. (*Medrano* at p. 1018; see also § 1170.95, subd. (a) [authorizing those "convicted of felony *murder* or *murder* under a natural and probable consequences theory" to file a petition], italics added.) In order to avoid a result where individuals convicted of attempted murder are treated more harshly than those convicted of murder, the court concluded the *Estrada* rule

13

required it to consider the defendants' claims on direct appeal, "given that Senate Bill 1437 resulted in an ameliorative change to the criminal law applicable to their convictions." (*Medrano*, at p. 1018.) That holding has no bearing on a case like this, which involves a murder conviction. What triggered application of the *Estrada* rule in *Medrano* was the fact the Legislature was silent about SB 1437's retroactive application to *attempted* murder convictions. As we explained above, the Legislature was not similarly silent about the completed offense. Section 1170.95 clearly evinces a legislative intent to limit relief for eligible murder convictions to the petition process.

As a final point, we note, as the court did in *Martinez*, that our holding does not mean a defendant must wait until they have fully exhausted their direct appeal to seek relief under SB 1437. (See *Martinez*, *supra*, 31 Cal.App.5th at p. 729.) Although the filing of a notice of appeal vests exclusive jurisdiction in the appellate court until the appeal is decided on the merits and a remittitur issues (*People v. Perez* (1979) 23 Cal.3d 545, 554), a defendant retains the option of seeking to stay their pending appeal to pursue relief under SB 1437 in the trial court (*Martinez*, at p. 729). "A Court of Appeal presented with such a stay request and convinced it is supported by good cause can order the pending appeal stayed with a limited remand to the trial court for the sole purpose of permitting the trial court to rule on a petition under section 1170.95." (*Ibid.*, citing *People v. Awad* (2015) 238 Cal.App.4th 215, 220 [noting in the context of Proposition 47 that appellate courts "have the authority to issue a limited remand to the trial court, before reaching the merits of the appeal, for the specific purpose of allowing the lower court to

14

entertain a . . . petition to recall a sentence"].) If the section 1170.95 petition is successful, the direct appeal may be fully or partially moot. But if not, or if the petition is unsuccessful, a defendant "may seek to augment the appellate record, as necessary, to proceed with any issues that remain for decision." (*Martinez*, at p. 729.) Cervantes has not requested such a stay, and thus we express no opinion about whether he would be able to demonstrate the good cause necessary for a limited remand.

B.    *The Gang Enhancement*

Cervantes argues that the court imposed (and stayed) a 10-year gang enhancement under section 186.22, subdivision (b)(1) on his murder count and that the enhancement is unauthorized because the court also imposed the sentence of 15 years to life under section 186.22, subdivision (b)(5). The People agree with Cervantes that the court imposed the enhancement and agree we should strike it as unauthorized even though the court stayed it. We agree that an enhancement *would* be unauthorized in this case because the alternative penalty provision applies. However, as we interpret the sentencing hearing transcript, the court did not impose an enhancement to the murder count.

Section 186.22, subdivision (b) authorizes additional punishment when a felony is committed for the benefit of a criminal street gang. The additional punishment generally involves sentence enhancements that vary based on the nature of the underlying felony. (*Ibid.*) However, the statute provides that if the underlying felony is punishable by a life term, the court must impose a minimum parole eligibility period of 15 years (often called the "alternative penalty provision"), rather than an enhancement. (§ 186.22, subd. (b)(5);

15

*People v. Fiu* (2008) 165 Cal.App.4th 360, 390; *People v. Lopez* (2005) 34 Cal.4th 1002, 1004.) In other words, when a court imposes the alternative penalty provision under section 186.22, subdivision (b)(5), it cannot also impose an enhancement under section 186.22, subdivision (b)(1).

Here, when sentencing Cervantes for the murder, the court said: "[F]or count 1, sir, you are sentenced to the only sentence which is available, 15 years to life. For the allegation pursuant to 186.22, subdivision (b), subsection (1), subsection (c), that would mandate 15 years to life, but that is already the sentence. So [the true finding on the gang allegation] effectively does nothing to the sentence for Count 1." The prosecutor then asked, "Is it 654?" (meaning, is it stayed under section 654?), and the court responded, "It's just 15 to life. It's just like saying 15 to life twice. What this means is if the sentence was less, it has to be 15 calendar years to life. But it has no effect [on] the ultimate aggregate sentence for Count 1. It is only 15 years to life." This exchange makes clear that the court imposed the alternative penalty of 15 years to life. At no point did the trial court say the word enhancement or mention adding 10 years to the indeterminate sentence. True, the court cited the 10-year enhancement provision, section 186.22, subdivision (b)(1), but in the context of this exchange, it is obvious that was an inadvertent mistake and the court intended to cite section 186.22, subdivision (b)(5), the alternative penalty provision.

We believe the parties' confusion understandably arises from the minute order, which states "As to Enhancement 1V in count 1, the court imposes the indeterminate

16

sentence of 15 years to Life. 654 PC stay granted as to Enhancement 1V in Count 1."
There are two errors in that statement. The 15 year to life sentence is not an enhancement
and the court did not stay any portion of the sentence for count 1 under section 654. The
errors aside, even if the minute order did state the court had imposed a 10-year
enhancement, it is the court's oral pronouncement of judgment as reflected in the
reporter's transcript that controls, not the minute order, and appellate courts may correct
clerical sentencing errors on appeal. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) To
clear up the confusion, we will direct the trial court to correct the minute order to delete
the reference to an enhancement for count one and the reference to a stay under section
654.

    C.    *Section 1203.1c Costs*

    Cervantes argues, and the People agree, that we should strike the $1,500
presentence confinement fee because he was sentenced to prison, not granted probation.
(See *People v. Dailey* (1991) 235 Cal.App.3d Supp. 13, 20-21 ["sections 1203.1b and
1203.1c provide for imposing on a *probationer* the costs of presentence investigation and
report, probation services, and incarceration"], italics added.) While we agree with the
parties that a section 1203.1c fee would not be proper in this case, this is another instance
of the minute order conflicting with the reporter's transcript. At the sentencing hearing,
the court stated its intention to impose a $1,500 presentence confinement fee, but shortly
thereafter reconsidered its position and determined Cervantes could not afford it (and thus
did not impose it). The minute order reflects that the court did impose the fee, but as

noted above, it's the court's oral judgment that controls. (*People v. Mitchell*, *supra*, 26 Cal.4th at p. 185.) Thus, we conclude the court did not impose a presentence confinement fee (which would have been unauthorized if it had been imposed) and will direct the court to correct the sentencing minute order to so reflect.

      D.      *Section 296 and Registration*

On Cervantes's abstract of judgment, the trial court checked the "registration requirement" box and inserted section 296, subdivision (a) as the code section authorizing the requirement. Cervantes argues, and the People correctly concede, that section 296 does not authorize or provide for registration, and as a result, the reference to registration in the abstract of judgment should be deleted.

Section 296, subdivision (a)(1) requires defendants convicted of a felony to provide DNA samples and print impressions. In compliance with this provision, at sentencing, the trial court ordered Cervantes to submit prints and blood and saliva specimens. Section 296 does not, however, mandate any form of registration. It's possible the trial court's mistake in ordering registration under section 296 comes from the fact section 296 *mentions* registration when mandating prints and DNA samples from those required "to register in California as a sex offender under Section 290." Regardless of the reason for it, the reference to registration in the abstract of judgment is incorrect and must be deleted.

E.      *Fines and Fees (Dueñas)*

Cervantes claims the trial court violated his due process rights as articulated in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 by imposing his fines and fees without consideration of his ability to pay. Pointing out that Cervantes made no objections to the fines and fees at his sentencing hearing, the People argue he forfeited his challenge. Putting forfeiture aside, we conclude that even if there were *Dueñas* error in this case, the error would be harmless because the record demonstrates, beyond a reasonable doubt, that Cervantes will be able to pay the total amount imposed with prison wages. (See *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [*Dueñas* error was harmless because record demonstrated beyond a reasonable doubt that the defendant would earn sufficient prison wages during his six-year prison term to pay his fines and assessments of $370].)

Cervantes's ability to pay includes "[his] ability to obtain prison wages and to earn money after his release from custody." (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837; *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1376.) "[E]very able-bodied prisoner" must work while imprisoned. (Pen. Code, § 2700.) Prison wages range from $12 to $56 per month, depending on the job and skill level involved. (Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).) Up to fifty percent of Cervantes's wages and trust account deposits will be deducted to pay any outstanding restitution fine, plus another 5 percent for the administrative costs of this deduction. (Pen. Code, § 2085.5, subds. (a), (e); Cal. Code Regs., tit. 15, § 3097, subd. (f).)

19

Cervantes was 21 years old at the time of sentencing, and the record contains no indication he is either unhealthy or unable to work. If we assume the probation department sets the cost of preparing the presentence report cost at the maximum of $1,095, the total amount of Cervantes's financial obligation will be $2,064.58.[3] Assuming also that Cervantes will earn the lowest wage of $12 a month for the duration of his sentence, it will take him approximately 172 months (about 14 years) to pay off that amount. We recognize that "[a]n inmate's assignment to a paid position is a privilege dependent on available funding, job performance, seniority and conduct" (Cal. Code Regs., tit. 15, § 3040, subd. (k)), but because Cervantes is so young and his sentence far exceeds 14 years, there is a strong likelihood he will hold a paid position long enough to satisfy his financial obligation. We therefore conclude, as we did in *Jones*, that Cervantes's ability to pay the total amount imposed with prison wages "forecloses a meritorious inability to pay argument." (*Jones*, *supra*, 36 Cal.App.5th at p. 1035.)

## III

## DISPOSITION

We direct the trial court to correct the July 20, 2018 sentencing minute order to reflect that it did not impose an enhancement or a stay on count 1 or a section 1203.1c presentence confinement fee. We also direct the trial court to correct the abstract of judgment to reflect that it did not impose a registration requirement. In all other respects,

---

[3] That is, the sum of $300 (restitution fine), $1,095 (probation report costs), $60 (conviction fee), $80 (court operations fee), $514.58 (booking fee), plus 5 percent of the $300 restitution fine—$15—for the administrative costs of the restitution deduction.

we affirm the judgment. The trial court shall prepare a corrected abstract of judgment and minute order and forward certified copies to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:

CODRINGTON
Acting P. J.

RAPHAEL
J.